IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ILLINOIS RIGHT TO LIFE COMMITTEE,<br><br>Plaintiff,<br><br>v.<br><br>J.B. PRITZKER, in his official capacity as Governor of the State of Illinois,<br><br>Defendant. | No. 1:20-cv-3675<br><br><br><br>**Complaint** |

## INTRODUCTION

1. Churches are a form of expressive association because an expressive association is simply the corporate manifestation of speech and interaction within a community of shared belief or common purpose. *See Roberts v. Jaycees*, 468 U.S. 609 (1984). An expressive association's events and rallies are also like protest rallies and marches. And like churches and marches, many expressive associations engage in timely speech on issues of current concern. And the U.S. Supreme Court has recognized that in-person conversation is the most persuasive form for such speech. *McCullen v. Coakley*, 573 U.S. 464, 488-89 (2014).

2. Yet, unlike churches, Illinois Right to Life is barred from gathering in groups greater than 10 under Governor Pritzker's Executive Order 2020-38. And unlike protestors against police brutality, it has not been given an exemption based on his sympathy, recognition, and participation. This disparate treatment of similar expressive activities violates both the First and 14th Amendments.

1

3. Therefore, Illinois Right to Life brings this suit under 42 U.S.C. § 1983, seeking declaratory and injunctive relief.

## PARTIES

4. Plaintiff Illinois Right to Life is a nonprofit organization that educates on the beauty and value of all human life regardless of a person's size, gender, race, age, or disability. They use a grassroots approach to build a culture of life in Illinois that welcomes and loves all human life from conception through natural death. They are headquartered in Cook County, Illinois.

5. Defendant J.B. Pritzker is governor of the State of Illinois and the authority for Executive Order 2020-38. He lives and works in Cook County, Illinois. His address for service of process is Office of the Governor, 100 W. Randolph St., 16-100, Chicago IL 60601.

## JURISDICTION AND VENUE

6. This case raises claims under the First and 14th Amendments of the United States Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

7. Venue is appropriate under 28 U.S.C. § 1391(b)(1) and (2) because the Defendant is headquartered in, and a substantial portion of the events giving rise to the claims occurred in, the Northern District of Illinois.

## FACTUAL ALLEGATIONS

8. Illinois Right to Life (IRL) is Illinois' leading pro-life organization.

9. IRL typically gathers in-person in groups of more than 10 or 50 persons for a variety of activities: nearly twenty training sessions for its members and activists each fall; rallies in public places connected to the pro-life cause; educational panel discussions around timely topics; and speaking engagements at schools and churches.

10. This spring, because of the ban on group gatherings, IRL had to cancel two planned panel discussions featuring a national speaker from Colorado who intended to address the connections between abortion, pornography and human trafficking. IRL anticipated over 100 attendees at each event. When a new Planned Parenthood clinic opened in Waukegan, IRL held a socially distanced protest in conjunction with other organizations that was minimally attended because of fear among its activists about the order banning gatherings.

11. Fundraising events make IRL's other activities possible. Each summer for the last 11 years, for instance, IRL has hosted a Rise and Dine Benefit Breakfast for Project Love, its charitable effort to support women in crisis pregnancies. Project Love provides grants to women who seek assistance from pregnancy resource centers and find themselves facing financial hardships at the same time as their pregnancy. Project Love makes direct payments to landlords, utilities, and other creditors to help women who otherwise feel financially incapable of carrying their babies to term. A majority of the women who receive Project Love's support come

3

from minority backgrounds. IRL believes Project Love's work is especially important in this moment, when so many more people than normal are facing deep financial distress. Yet this year the "Rise and Dine Breakfast" was canceled because of the Governor's ban on group gatherings, and their small-dollar fundraiser selling Mother's Day greeting cards at area parishes largely failed as well.

12. Looking forward, IRL is scheduled to have a nationally known speaker come to a private venue in Illinois on July 23, 2020, to headline its 52nd Leaders for Life banquet, which was rescheduled from April due to COVID-19. This annual event draws hundreds of attendees who generously support IRL's work and listen to the speaker. IRL is working with its banqueting host to take numerous practical steps to provide a safe, welcoming, COVID-conscious event for its guests and supporters.

13. The funds raised at the Leaders for Life banquet make possible much of IRL's work: last year many of the dollars raised at the banquet were dedicated to the highly successive Pro-Life Training Tour, which equipped hundreds of IRL's members and supporters with tools and information to spread IRL's pro-life message to friends, neighbors, and especially women making these difficult decisions about whether to terminate a pregnancy. The funds also paid for physical speech collateral, such as pro-life bumperstickers and t-shirts, which often function as conversation starters for IRL's trained activists.

14. Looking from weeks to months ahead, IRL intends to repeat its highly successful Pro-Life Training Tour; last year the tour held 19 events, most of which drew over 50 people.

15. IRL feels especially convicted that its pro-life educational speech is highly timely and must continue as long as the doors to abortion clinics remain open, even in the midst of a pandemic. Associated Press, "Abortion clinics: Pandemic boosts demand, heightens stress," Chicago Sun-Times (April 13, 2020).[1]

16. IRL believes that Internet-based alternatives are not sufficient to spread its speech effectively. Abortion is a deeply personal topic; the issues IRL works on are some of the most personal and emotional decisions that women and others face in their lifetimes, and conversations around them often turn emotional. A videoconference cannot replace the interpersonal interaction called for around this topic. IRL believes that in-person, human-to-human interactions are the best way to compassionately share its views.

17. Governor Pritzker's Executive Order 2020-38, § 2.d (issued May 29, 2020), states, "Any gathering of more than 10 people is prohibited unless exempted by this Executive Order."[2]

---

[1] Available online at https://chicago.suntimes.com/coronavirus/2020/4/13/21219255/abortion-clinics-pandemic-boosts-demand-heightens-stress-texas-coronavirus-covid-19-womens-health.

[2] Available online at https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-38.aspx.

18. That same order exempts religious organizations. *Id.* at § 2.j.a. Churches and other faith-based associations are "encouraged to consult and follow the recommended practices and guidelines from the Illinois Department of Public Health," which means "limit[ing] indoor services to 10 people." *Id.* But they are only "encouraged" to "consult" the "recommended" "guidelines"; they are not required to obey them.

19. Governor Pritzker also has declined to enforce his executive order against protestors assembling in groups of hundreds or more in response to recent police brutality. The Governor has characterized these marchers as "exercising their First Amendment rights" and stated that he was deploying National Guard troops to "protect[ . . . the] First Amendment rights of peaceful protesters." In fact, he himself has engaged in one such march, recognizing the right of participants to make a free choice to attend even amidst a pandemic.

20. Yet in other instances, police are deployed to break up gatherings and political rallies. *See, e.g.,* "Police Break Up Rally Protesting Stay-At-Home Order At Buckingham Fountain," CBS-2 (May 25, 2020).[3] When Chicago police broke up a political protest at the end of May, Mayor Lori Lightfoot tweeted, "[W]hile we respect 1st amendment rights, this gathering posed an unacceptable health risk and was dispersed. No matter where in the city you live, no one is exempt from @GovPritzker's stay-at-home order." *Id.*

---

[3] Available online at https://chicago.cbslocal.com/2020/05/25/police-break-up-rally-protesting-stay-at-home-order-at-buckingham-fountain/.

21. Because enforcement of the order is on the whim of the Governor or Mayor, and because IRL wants to obey the law, IRL cannot hold its events. *See Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 591 (7th Cir. 2012).

22. Governor Pritzker has issued a "Restore Illinois" plan that imposes an attendance cap of 50 on gatherings in Phase 4,[4] a limitation the enforcement of which the Governor recently reaffirmed in remarks to the media. Dan Petrella, "Gov. J.B. Pritzker cool to hotel industry's push for larger gatherings in next phase of reopening," Chi. Trib. (June 15, 2020);[5] "Illinois moving into Phase 4 of coronavirus reopening plan Friday: Here are the full guidelines," WGN-9 (June 22, 2020).[6] Thus, even if the state moves into the next phase in coming weeks or months, IRL will continue to be barred from holding its rallies, trainings, seminars, and fundraisers because of the 50-person ban.

---

[4] "Restore Illinois," Office of the Governor (May 5, 2020), available online at https://coronavirus.illinois.gov/sfc/servlet.shepherd/document/download/069t000000BadS0AAJ?operationContext=S1.

[5] Available online at https://www.chicagotribune.com/coronavirus/ct-coronavirus-illinois-hotels-pritzker-20200615-jqup6a65irekjdguyi45m3xyne-story.html.

[6] Available online at https://wgntv.com/news/coronavirus/illinois-moving-into-phase-4-of-coronavirus-reopening-plan-friday-here-are-the-full-guidelines/?fbclid=IwAR0kV_RUKHw7b9DpLKo0Pao0XcmzPJUhfClBJHNorloFC3gr__mN4Gg6IhM ("Meetings and events: Venues and meeting spaces can resume with the lesser of up to 50 people OR 50% of overall room capacity. . . . This includes activities such as conferences and weddings.").

7

## COUNT I

### By treating IRL differently from other expressive associations and activities, the Governor's Executive Order 2020-38 violates the First Amendment.

23. The allegations contained in all preceding paragraphs are incorporated herein by reference.

24. The rights to freedom of speech and assembly in the First Amendment have been incorporated to and made enforceable against the states through the 14th Amendment guarantee of due process. *Gitlow v. New York*, 268 U.S. 652 (1925).

25. When the state grants access to one set of speakers, it must give equal access and treatment to all speakers of a similar character. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 48 (1983). It may not favor one speaker over another. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995); *Citizens United v. F.E.C.*, 558 U.S. 310, 340 (2010). To do otherwise is to discriminate in favor of certain speakers and against other similar speakers based only on the content of their speech — in this case religious speech versus educational speech, or pro-Black Lives Matter speech versus pro-life speech. The First Amendment does not allow content-based restrictions unless the government provides a compelling government interest and the restriction is narrowly tailored to serve that interest. *Reed v. Town of Gilbert*, 576 U.S. 155 (2015).

26. Though the government has a compelling interest in preventing the spread of COVID-19, its restrictions are not narrowly tailored to prevent the spread of COVID-19 because there is no reason to believe that the content or viewpoint of

8

the speakers exempt from the governor's order makes those speakers less susceptible to spreading COVID-19. *See Roberts v. Neace*, 958 F.3d 409, *12 (6th Cir. 2020) (per curiam). *See also* Daniela Hernandez, et al., "Early Data Show No Uptick in Covid-19 Transmission From Protests," Wall St. J. (June 18, 2020).[7] Moreover, speech at fundraising events is entitled to First Amendment protection just like speech in other settings. *See Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600 (2003).

## COUNT II

**By treating IRL differently from other expressive associations and activities, the Governor's Executive Order 2020-38 violates the 14th Amendment's equal-protection clause.**

27. The allegations contained in all preceding paragraphs are incorporated herein by reference.

28. The right to equal treatment of speakers under the First Amendment is coterminous with the general right to equal protection of the laws under the 14th Amendment. *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96 (1972). *See also Proft v. Raoul*, 944 F.3d 686, 691 (7th Cir. 2019).

29. Therefore, just as the executive order violates the First Amendment, it also violates the 14th Amendment's equal protection clause.

---

[7] Available online at https://www.wsj.com/articles/recent-protests-may-not-be-covid-19-transmission-hotspots-11592498020.

## PRAYER FOR RELIEF

Plaintiff Illinois Right to Life respectfully requests that this Court:

a. Declare that limiting expressive associations, like Plaintiff, to in-person meetings of no more than 10 people, while placing no restrictions on in-person meetings of religious expressive associations or certain protest marches, violates the First Amendment's free speech clause;

b. Declare that limiting expressive associations, like Plaintiff, to in-person meetings of no more than 10 people, while placing no restrictions on in-person meetings of religious expressive associations or certain protest marches, violates the 14th Amendment's equal protection clause;

c. Enjoin Governor Pritzker from enforcing Executive Order 2020-38 against Plaintiff Illinois Right to Life;

d. Award Plaintiffs their costs and attorneys' fees under 42 U.S.C. § 1988; and

e. Award any further relief to which Plaintiffs may be entitled.

Dated: June 23, 2020

Respectfully Submitted,

**ILLINOIS RIGHT TO LIFE COMMITTEE**

By:  /s/ Daniel R. Suhr

Daniel R. Suhr
Jeffrey M. Schwab
Liberty Justice Center
190 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
Telephone (312) 263-7668
dsuhr@libertyjusticecenter.org
jschwab@libertyjusticecenter.org

*Attorneys for Plaintiffs*